71 Cal.2d 332 (1969)
THE PEOPLE, Plaintiff and Appellant,
v.
GWENDOLYN LEE SCOMA, Defendant and Respondent.
Crim. No. 12562. 
Supreme Court of California. In Bank. 
June 18, 1969.
 Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Robert R. Granucci and Gloria DeHart, Deputy Attorneys General, for Plaintiff and Appellant.
 Sheldon Portman, Public Defender, and Fred S. Lucero, Deputy Public Defender, for Defendant and Respondent.
 SULLIVAN, J.
 Defendant Gwendolyn Lee Scoma was charged by information with possession of marijuana in violation of section 11530 of the Health and Safety Code. Following arraignment she moved that the information be set aside because she had been held to answer without reasonable and probable cause (Pen. Code, 995) in that the only evidence against her was obtained through execution of a search warrant based upon an affidavit insufficient on its face. [fn. 1] The motion was granted, and the People appeal from the order setting aside the information. (Pen. Code, 1238, subd. 1.)
 The affidavit whose sufficiency is here in question stated that the affiant, a detective sergeant engaged in the investigation of illicit narcotics traffic, had been informed by a certain named juvenile that one "Dewey" had furnished marijuana and restricted dangerous drugs to said juvenile within the immediately preceding three weeks; that "Dewey" was presently dealing in narcotics at a certain address in the San Jose area; and that "Dewey" had previously dealt in narcotics at other premises described by the juvenile. The affidavit also alleged that affiant had been informed by the juvenile that the latter had been reported to the county sheriff's office by his father when a shoebox containing marijuana and restricted dangerous drugs was found in his possession; that affiant "was also told by the aforesaid [juvenile] that lists of telephone numbers and names contained in his wallet, which are in the possession of your affiant, contain the name of 'Dewey' among others, and contains a telephone number, 259-7962, which has been verified by your affiant to be a number listed to Mary Ann Wilkins" at the premises alleged to be "Dewey's" present address; and that affiant "also has in his possession notes from [the juvenile's] wallet which said [juvenile] *335 has identified as being a price list for 'stuff,' which has been identified by said [juvenile] as marijuana and a price list for 'spoons' which has been identified to your affiant as being the prices for methamphetamine. [The juvenile] has told your affiant that said price list was furnished to him by 'Dewey.' " Finally, the affidavit stated that the landlady at the premises alleged by the juvenile to be "Dewey's" present address had told affiant that said premises were occupied by Mary Ann Wilkins and a man matching the physical description of "Dewey" provided by the juvenile; it was also alleged that the landlady had found "papers in the rubbish which tie Mary Ann Wilkins" to another address in San Jose which, according to the juvenile, had been "Dewey's" previous address and the scene of past narcotics transactions.
 On the basis of this affidavit a warrant was issued authorizing a search of the premises alleged to be "Dewey's" present address. On March 17, 1967, police executed the warrant and observed marijuana protruding from the purse of defendant, who was in the apartment.
 [1] A defendant is held to answer without reasonable or probable cause within the meaning of section 995 of the Penal Code when the only substantial evidence supporting his commitment has been obtained in violation of the Fourth Amendment. (See Badillo v. Superior Court (1956) 46 Cal.2d 269, 271 [294 P.2d 23]; Rogers v. Superior Court (1955) 46 Cal.2d 3, 7 [291 P.2d 929]; cf. Greenberg v. Superior Court (1942) 19 Cal.2d 319, 321 [121 P.2d 713].) [fn. 2] [2] The Fourth Amendment, whose proscriptions are applicable to the states through the Fourteenth Amendment (Aguilar v. Texas (1964) 378 U.S. 108, 110 [12 L.Ed.2d 723, 725, 84 S.Ct. 1509]; Ker v. California (1963) 374 U.S. 23, 33 [10 L.Ed.2d 726, 737, 83 S.Ct 1623]), provides insofar as is here relevant that "... no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person and things to be seized." State constitutional and statutory provisions are to the same effect. (Cal. Const., art. I, 19; Pen. Code, 1525.) *336 [3] A search warrant is issued without probable cause, and therefore in violation of constitutional proscriptions, when the affidavit upon which it is based contains no competent evidence sufficient to support the finding of the magistrate. (People v. Stout (1967) 66 Cal.2d 184, 193 [57 Cal.Rptr. 152, 424 P.2d 704]; see People v. Govea (1965) 235 Cal.App.2d 285, 297 [45 Cal.Rptr. 253].) The indicated questions of competency and sufficiency are questions of law. (People v. Stout, supra, 66 Cal.2d 184, 193; People v. Tillman (1965) 238 Cal.App.2d 134, 137 [47 Cal.Rptr. 614]; People v. Govea, supra, 235 Cal.App.2d 285, 297.)
 [4] The basic criteria for determining the constitutional sufficiency of an affidavit supporting a search warrant were set forth by the United States Supreme Court in Aguilar v. Texas, supra, 378 U.S. 108: "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant [citation], the magistrate must be informed of some of the underlying cricumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed [citation], was 'credible' or his information 'reliable.' " (Fn. omitted.) (378 U.S. at p. 114 [12 L.Ed.2d at p. 728].) [fn. 3] [5a] In subsequent cases the high court, while observing that the examination of affidavits in light of these criteria should not proceed "in a hypertechnical, rather than a commonsense, manner" (United States v. Ventresca (1965) 380 U.S. 102, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741]), has insisted that warrants should not be sustained when to do so would dilute "important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry." (Fn. omitted.) (Spinelli v. United *337 States (1969) 393 U.S. 410, 419 [21 L.Ed.2d 637, 645, 89 S.Ct. 584].)
 In the recent case of People v. Hamilton (1969) ante, p. 176 [77 Cal.Rptr. 785, 454 P.2d 681], we concluded that the affidavit there in question was struck by the first "prong" [fn. 4] of the Aguilar test in that it failed to adequately reflect "the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were. ..." (Aguilar v. Texas, supra, 378 U.S. 108, 114 [12 L.Ed.2d 723, 728, 84 S.Ct. 1509].) [6a] The affidavit now before us presents no such problem, for the hearsay statements by which the report of illegal activity is reflected therein are factual in nature and clearly indicate that the informant had personal knowledge of such illegal activity. It is the second "prong" of the Aguilar test to which this affidavit is vulnerable.
 [7] It is clear that a warrant may not stand, even with the assistance of the constructional guide adverted to in United States v. Ventresca, supra, 380 U.S. 102, [fn. 5] if the affidavit is based upon information provided by an informant and fails to state facts from which the magistrate could reasonably conclude that such information is reliable. A number of California cases establish the same proposition. In Willson v. Superior Court (1956) 46 Cal.2d 291 [294 P.2d 36], a case involving the cognate question of search incident to arrest without a warrant (see People v. Govea, supra, 235 Cal.App.2d 285, 296) we said: "Although information provided by an anonymous [fn. [6]] informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency [citation], an arrest may not be based solely on such information [citation], *338 and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable." (46 Cal.2d at p. 294.) (See also People v. Gallegos (1964) 62 Cal.2d 176, 178- 179 [41 Cal.Rptr. 590, 397 P.2d 174]; People v. Wells (1966) 245 Cal.App.2d 203, 207-208 [53 Cal.Rptr. 762]; People v. Gallardo (1966) 244 Cal.App.2d 105, 106 [52 Cal.Rptr. 777]; People v. Tillman, supra, 238 Cal.App.2d 134, 138; People v. West (1965) 237 Cal.App.2d 801, 804-805 [47 Cal.Rptr. 341]; Galena v. Municipal Court (1965) 237 Cal.App.2d 581, 586-591 [47 Cal.Rptr. 88]; People v. Govea, supra, 235 Cal.App.2d 285, 297-298.)
 In the Willson case we went on to suggest some of the means by which it might be shown that reliance on an informant's report of illegal activity was reasonable. "In some cases the identity of, or past experience with, the informer may provide ... evidence [of the reliability of the information] [citations], and in others it may be supplied by similar information from other sources or by the personal observations of the police." (46 Cal.2d at p. 295.)
 [8] Turning to the affidavit in the instant case, it is clear that no facts are stated relative to the informant's identity [fn. 7] which indicate the reliability of information given by him. Further, the affidavit states no facts indicating past police experience with the informant. Thus, the only significant facts in the affidavit upon which the magistrate could have concluded that the informant's report of illegal activity was reliable are (1) that certain substances found in the informant's possession were identified by laboratory analysis as narcotics; (2) that the landlady at "Dewey's" alleged residence both confirmed that a man matching "Dewey's" description lived at that address, and stated that certain papers discovered by her indicated that a woman living with the suspect had lived with him at "Dewey's" alleged previous address; (3) that certain lists of names and telephone numbers obtained from the informant's wallet contained the name and telephone number of "Dewey" among others; and (4) that *339 certain notes found in the informant's wallet were identified by him as narcotics price lists which had been furnished to him by "Dewey."
 [6b] The foregoing facts provide absolutely no basis upon which the magistrate could reasonably conclude that the informant's report of illegal activity on the part of "Dewey" was reliable information. Surely the fact that the informant was found to possess narcotics gives no credence to his assertion that he obtained such narcotics from a named person; he obviously obtained them from someone, but mere possession cannot constitute support for his claim that he obtained them from one person rather than another. Of no greater assistance is the fact that "Dewey's" past and present addresses were those provided by the informant; again, no inference of criminal activity on "Dewey's" part may be drawn. (See People v. Gallegos, supra, 62 Cal.2d 176.) [fn. 8]
 Equally without value in assessing the reliability of the incriminating information provided by the juvenile are the notes and lists obtained from his wallet. Granting that the lists and notes might have been written before the informant was apprehended or knew that he was going to be interviewed by police, this would show at most only that the informant possessed a narcotics price list and that the name and telephone number of the person he accused of illegal activity appeared "among others" on a list in his wallet. It cannot reasonably be maintained that the list of names and telephone numbers supported the informant's accusation of "Dewey" any more than it would have supported his accusation of any other person on that list.
 Thus it appears that none of the facts in the affidavit provide corroborative support for the informant's accusation of illegal activity on the part of "Dewey." This is so because they amount to merely a reiteration of the accusation by the *340 informant; the affidavit contains absolutely nothing to indicate that additional facts independently known or discovered by the police supported the accusation thereby imparting credit to the informant. As the court said in Ovalle v. Superior Court, supra, 202 Cal.App.2d 760, at page 763: "The vice of the police action lies not in the kind of information procured but in the unrealiability of the source. The quantification of the information does not necessarily improve its quality; the information does not rise above its doubtful source because there is more of it."
 In view of the foregoing we conclude that the affidavit in this case sets forth no facts from which the magistrate could reasonably conclude that the informant's report of illegal activity on the part of "Dewey" was reliable; that the affidavit fails to conform to constitutional requirements; and that the warrant based upon it was therefore issued in violation of the Fourth and Fourteenth Amendments. [5b] While we concur without qualification in the view of the United States Supreme Court that affidavits in support of search warrants are to be construed in a "commonsense" manner (United States v. Ventresca, supra, 380 U.S. 102, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741]), the Constitution does not permit us to supply under the guise of interpretation factual material on the basis of which the magistrate can reasonably distinguish between probable cause and capricious accusation.
 The order is affirmed.
 Traynor, C. J., Peters, J., and Tobriner, J., concurred.
 MOSK, J.
 I dissent.
 Although the affidavit of the police officer is, of course, not identical with that involved in People v. Hamilton (1969) ante, p. 176 [77 Cal.Rptr. 785, 454 P.2d 681], I disagree with the majority for substantially the same reasons indicated in my dissent in Hamilton, ante, at page 183.
 There is an additional reason for finding the affidavit for issuance of a warrant adequate here. The 17-year-old juvenile involved was not an informant in the classic sense; he was essentially a victim. While not entirely blameless for his predicament, the minor had been furnished marijuana, methamphetamine and LSD by persons dealing in narcotics from described premises. The boy's father discovered the narcotics and turned him over to juvenile authorities, to whom the boy revealed his source of supply. *341
 Precautions required for reliance upon information given by informants are not applicable when the knowledge is imparted to law enforcement agencies by a victim or observer of an offense. (People v. Poindexter (1958) 51 Cal.2d 142, 149 [330 P.2d 763]; People v. Guidry (1968) 262 Cal.App.2d 495, 498 [68 Cal.Rptr. 794]; People v. Gardner (1967) 252 Cal.App.2d 320, 324 [60 Cal.Rptr. 321]; People v. Lewis (1966) 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 579].) A juvenile's complaint against his supplier of contraband has been held sufficient to provide probable cause for an arrest. (People v. Bishop (1965) 235 Cal.App.2d 658 [45 Cal.Rptr. 533]; see also People v. Weathers (1958) 162 Cal.App.2d 545 [328 P.2d 222].) Similar information should be sufficient, together with the additional circumstances related in the instant affidavit, to indicate reliability and to justify issuance of a warrant.
 I believe we should adhere to the expression of this court in People v. Keener (1961) 55 Cal.2d 714, 723 [12 Cal.Rptr. 859, 361 P.2d 587]: "One of the purposes of the adoption of the exclusionary rule was to further the use of warrants, and it obviously is not desirable to place unnecessary burdens upon their use."
 McComb, J., and Burke, J., concurred.
NOTES
[fn. 1] 1. At the preliminary examination defendant's motion to suppress the subject evidence on the same ground was denied.
[fn. 2] 2. Section 1538.5 of the Penal Code, which deals in general with motions to suppress as evidence property obtained in violation of the Fourth Amendment, provides in subdivision (n) that "Nothing in this section shall be construed as altering ... (v) the procedure and law relating to a motion made pursuant to Section 995 or the procedures which may be initiated after the granting or denial of such a motion." It therefore appears that section 995 remains a proper remedy when the evidence alleged to have been obtained through illegal means is the only substantial evidence supporting the commitment.
[fn. 3] 3. A formulation of the "two-pronged test" was enunciated in this state shortly after Aguilar in the following terms: "Before the question of probable cause can be resolved and a search warrant properly issued on an affidavit based primarily on hearsay, the federal cases prescribe the following two requirements. First, the statement of the informer in the affidavit must be factual in nature rather than conclusionary and must indicate that the informer had personal knowledge of the facts related. ... Secondly, the affidavit must contain some underlying factual information from which the issuing judge can reasonably conclude that the informant, ... was credible or his information reliable. In other words, the magistrate's finding of probable cause can be sustained only if the affidavit presents a substantial basis for crediting the hearsay." (Fn. omitted.) (People v. Tillman, supra, 238 Cal.App.2d 134, 137-138.) (See also People v. Hamilton (1969) ante, pp. 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681].)
[fn. 4] 4. The twin criteria set forth in Aguilar have been termed collectively "Aguilar's two-pronged test." (Spinelli v. United States, supra, 393 U.S. 410, 413 [21 L.Ed.2d 637, 642, 89 S.Ct. 584].)
[fn. 5] 5. In Spinelli v. United States, supra, 393 U.S. 410, it was said: "It is true, of course, that the magistrate is obligated to render a judgment based upon a common sense reading of the entire affidavit. United States v. Ventresca, 380 U.S. 102, 108 [13 L.Ed.2d 684, 688, 85 S.Ct. 741] (1965). We believe, however, that the 'totality of circumstances' approach taken by the Court of Appeals paints with too broad a brush. Where, as here, the informer's tip is a necessary element in a finding of probable cause, its proper weight must be determined by a more precise analysis." (393 U.S. at p. 415 [21 L.Ed.2d at p. 643].)
[fn. [6]] [6]. Whether an informant is named or unnamed is immaterial insofar as the showing of probable cause is concerned except to the extent that his identity bears upon his reliability. (See fn. 7, post.) The question, whether or not the informant is named, is whether his information is reliable. (See People v. Bates (1958) 163 Cal.App.2d 847, 852 [330 P.2d 102].)
[fn. 7] 7. The rationale of the so-called "citizen informer" cases (see People v. Griffin (1967) 250 Cal.App.2d 545, 550-552 [58 Cal.Rptr. 707]; People v. Lewis (1966) 240 Cal.App.2d 546, 549-550 [49 Cal.Rptr. 579]) has no application here, where the informant was apparently himself involved in narcotics traffic. (See Ovalle v. Superior Court (1962) 202 Cal.App.2d 760, 763 [21 Cal.Rptr. 385]; People v. Amos (1960) 181 Cal.App.2d 506, 509 [5 Cal.Rptr. 451].) Moreover, we reject as wholly without foundation in law the suggestion that the information given by the juvenile was somehow clothed with reliability because the informant was a minor. We disapprove People v. Bishop (1965) 235 Cal.App.2d 658 [45 Cal.Rptr. 533] to the extent it contains implications in support of this suggestion.
[fn. 8] 8. In Gallegos an untested informant was found to be in possession of narcotics and informed police that he had purchased them at a certain apartment occupied by a person known to him only by a nickname who drove a certain described automobile. Officers went to the apartment, saw defendant drive up in the described automobile, and made an arrest after asking defendant if he had been arrested for narcotics violations in the past and receiving an affirmative answer. The state sought to find corroboration for the report of illegal activity on defendant's part in the facts that defendant was driving the described automobile and lived in the described apartment. We rejected this claim: "[T]hese facts merely establish that the person who resided in the apartment drove the particular automobile. This bit of corroborated fact does little to bolster the untested informer's report of illegal activity, and is almost insignificant as far as any incrimination is concerned." (62 Cal.2d at p. 179.)