[Crim. No. 14452. In Bank. Aug. 5, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
NARVELL MADDEN, Defendant and Appellant.

COUNSEL

Lauren M. Handley for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas E. Warriner, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**PETERS, J.**—In a nonjury trial defendant was found guilty of possession of marijuana for sale (Health & Saf. Code, § 11530.5), possession of dangerous drugs (amphetamine) for sale (Health & Saf. Code, § 11911), and possession of firearms by a felon (defendant had a prior conviction for second degree burglary) (Pen. Code, § 12021). The trial court sentenced defendant on the marijuana count and dismissed the remaining counts.

Defendant was arrested on June 18, 1967, at 343 East 98th Street in Los Angeles.

Officer Walker, of the narcotics division of the Los Angeles Police Department, testified as follows: About two months prior to the arrest of defendant, he had received information from Officer Stovall of the narcotics division of the Compton Police Department that defendant lived in the Compton area and was peddling narcotics from his residence there. A few days prior to the arrest, Officer Walker received information from Officer Stovall that defendant had moved to 343 East 98th Street and was peddling narcotics from that address. Shortly after receiving that information, Officer Walker contacted "a confidential reliable informant who has given me information in the past on several occasions that has resulted in arrests and convictions for narcotics," and the informant confirmed Officer Stovall's information that defendant was living at the 98th Street address and was selling narcotics from that address. About 10 a.m. on the morning of the arrest, Officer Walker was informed by a superior officer, Lieutenant Hanks of the narcotics division of the Los Angeles Police Department, that defendant had a large quantity of narcotics at his residence at 343 East 98th Street and was peddling narcotics from this residence.

Officer Walker testified further: About 10:30 a.m. on the morning of the arrest, he and Sergeant Gouge arrived at the residence at 343 East 98th Street. Officer Walker knocked on the door of the residence, and the door was opened by defendant. Officer Walker identified himself and asked

defendant if he was Narvell Madden. Defendant replied in the affirmative, and the officer asked him whether he lived there. Defendant replied that he had lived there about two months, and he asked the officers to come into the house. The officers went into the house, and Officer Walker told defendant that they were there "on a narcotic investigation" and asked him whether he was or had ever been involved in narcotics. Defendant replied in the negative, and Officer Walker asked him whether there were any narcotics in the house. Defendant again replied in the negative, and the officer said, "Do you mind if we complete our investigation by searching your house for narcotics?" Defendant replied, "No, go ahead and search."

Marijuana, a pistol, and ammunition were found in the trunk of an abandoned car in defendant's back yard—which car was owned by defendant's ex-girl friend. Amphetamine tablets were found in a brown bag in a drawer next to the kitchen sink—right beneath a kitchen window that had been broken into about a month prior to the arrest. A very small amount of marijuana was found in the garage.

Defendant testified: Officer Walker knocked on his door, and when defendant opened the door, the officer asked him whether he was Narvell Madden. Defendant replied in the affirmative, and the officer "stuck his foot in the door" and showed defendant some identification. The officer asked, "who do you know that you did something to that wants to see you in jail?" Defendant replied, "No one." The officer then told defendant, "Well, we received several telephone calls that you have a large amount of narcotics around here," and asked defendant whether any narcotics were there. Defendant said "No." The officer said, "Well, we'll see," walked right past defendant, and started searching in the kitchen. Defendant did not invite the officer into the house nor tell him to search the house. He at no time consented to a search of the premises.

Defendant unsuccessfully sought to explain the presence of the contraband on the theory that he and his former girl friend had quarreled and that she or a friend had "planted" the contraband in an attempt to "frame" him.

The trial court found that the defendant did not consent to the entry or the search, but that the officer had a right to enter and to search, that he had probable cause to believe that a felony was being committed, and that the unidentified informer was reliable.

■ However, we have concluded that the record fails to show that there was probable cause to arrest defendant prior to the search. The in-

formation upon which Officer Walker relied for probable cause to arrest was information from two police officers and from a reliable informant that defendant was selling narcotics at his residence at 343 East 98th Street.

We held in *People* v. *Lara,* 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202], that, although an officer may make an arrest based on information received through "official channels," the prosecution is required to show that the officer who originally furnished the information had probable cause to believe that the suspect committed a felony. We reaffirmed this principle in the recent case of *Remers* v. *Superior Court, ante,* pp. 659, 666-667 [87 Cal.Rptr. 202, 470 P.2d 11], where we pointed out: "It is well settled that while it may be perfectly reasonable for officers in the field to make arrests on the basis of information furnished to them by other officers, 'when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness.' (*People* v. *Adkins,* 273 Cal.App.2d 196, 198 [78 Cal.Rptr. 397]; *People* v. *Lara,* 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Rice,* 253 Cal.App.2d 789, 792 [61 Cal.Rptr. 394]; *People* v. *Pease,* 242 Cal.App.2d 442, 448-450 [51 Cal.Rptr. 448]; *People* v. *Harvey,* 156 Cal.App.2d 516 [319 P.2d 689].) To hold otherwise would permit the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer. (Cf. *People* v. *Adkins, supra,* 273 Cal.App.2d 196, 198; *People* v. *Harvey, supra,* 156 Cal.App.2d 516, 523.) 'If this were so, every utterance of a police officer would instantly and automatically acquire the dignity of official information; "reasonable cause" or "reasonable grounds," . . . could be conveniently fashioned out of a two-step communication; and all Fourth Amendment safeguards would dissolve as a consequence.' (*People* v. *Pease, supra,* 242 Cal.App.2d 442, 449.)"

In the instant case, the prosecution made no showing of the basis of the informant police officers' information. Officer Walker testified that he received reports from the officers that defendant was selling narcotics at his residence, but he did not testify as to any circumstances which caused the officers to come to that conclusion.[1]

---

[1]In an analogous situation, the United States Supreme Court refused to give any weight to an officer's allegation, in his affidavit in support of a search warrant, that the defendant was known to the affiant and to other federal and local law enforcement officers as a gambler. (*Spinelli* v. *United States* (1969) 393 U.S. 410, 414 [21 L.Ed.2d

Of course, under the evidence, it is possible that each of the officers received his information from the same informant who informed Officer Walker. In other words, it is possible that there is just one source of information—the undisclosed informant. If the information from this one source is not a sufficient basis for an arrest, then it cannot become a sufficient basis merely because it is related to several officers rather than one. To hold that the prosecutor need not show the basis for the informant officers' information before such information can be utilized as a factor determining probable cause would be to permit just such a result.

Nor can Officer Walker rely on the informant's tip for probable cause.

In *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], the United States Supreme Court considered the issuance of search warrants based upon information supplied by confidential informants, holding that "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant [citation], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed [citation], was 'credible' or his information 'reliable.' " (*Id.*, at p. 114, fn. omitted [12 L.Ed.2d at p. 729].) In *Spinelli* v. *United States, supra,* 393 U.S. 410, 413 [21 L.Ed.2d 637, 641], the high court referred to this formulation as *"Aguilar's* two-pronged test."

In *Spinelli,* the affidavit in support of the warrant stated that the F.B.I., one of whose agents had prepared the affidavit, "has been informed by a confidential reliable informant that William Spinelli is operating à handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned the numbers WYdown 4-0029 and WYdown 4-0136." (*Id.*, at p. 422 [21 L.Ed.2d at p. 647].) The affidavit also stated, inter alia, that independent investigation had confirmed that the telephones in question were located in a certain apartment at which Spinelli was a frequent visitor. The court, holding that the affidavit fell short of constitutional sufficiency because it did not reveal the basis of the informant's conclusion, stated: "The tip [of the informant as reflected in the affidavit] does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running

---

637, 642, 89 S.Ct. 584].) The court reasoned that "just as a simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause, we do not believe it may be used to give additional weight to allegations that would otherwise be insufficient." (*Id.*, at pp. 418-419 [21 L.Ed.2d at pp. 644-645].)

a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. [Citation.] *In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." (Id.,* at p. 416 [21 L.Ed.2d at p. 643]; italics added.)

The Supreme Court rejected the argument that the facts provided by the informant "that Spinelli was using two specified telephones and that these phones were being used in gambling operations" were sufficient to show "that the informant had gained his information in a reliable way." (*Id.,* at p. 417 [21 L.Ed.2d at p. 644].) The court stated that "This meager report could easily have been obtained from an offhand remark heard at a neighborhood bar." (*Id.;* see *People* v. *Hamilton,* 71 Cal.2d 176, 181 [77 Cal. Rptr. 785, 454 P.2d 681].)

 Although no search warrant was involved in the instant case, the analysis required to determine whether there was probable cause is basically the same as in the situation involving a search warrant. (*Spinelli* v. *United States, supra,* 393 U.S. 410, 417, fn. 5 [21 L.Ed.2d 637, 644].) Moreover, it should be noted that, because " 'the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers. . . .' " a greater showing of probable cause is required to justify an arrest without a warrant than to justify a search pursuant to a warrant. (*Aguilar* v. *Texas, supra,* 378 U.S. 108, 110-111 [12 L.Ed.2d 723, 725-726]; see also *Price* v. *Superior Court,* 1 Cal.3d 836, 846 [83 Cal.Rptr. 369, 463 P.2d 721] (Mosk, J., concurring and dissenting); *People* v. *Keener,* 55 Cal.2d 714, 723 [12 Cal.Rptr. 859, 361 P.2d 587].)

 Like the affiant in *Spinelli,* Officer Walker did not comply with the first "prong" of the *Aguilar* test: that he set forth "some of the underlying circumstances from which the informant concluded that the narcotics were

where he claimed they were, . . ." (378 U.S. at p. 114 [12 L.Ed.2d at p. 729].)

Officer Walker testified that "The informant told me just as I have told you, that Narvell Madden lived at this address, and that he was selling pills and marijuana from the address. *That's all he told me.*" (Italics added.) The statement by the informant did not purport to be based on the informant's personal observations, did not indicate how the informant obtained his information, and did not provide any details upon which the trial court could have assumed that the informant obtained his information in a reliable way.[2]

The informant in the instant case provided significantly *less* facts by which the reliability of his information could be assessed than did each of the informants in the cases of *Price* v. *Superior Court, supra,* 1 Cal.3d 836, 839, 842, *People* v. *Scoma,* 71 Cal.2d 332, 334-335, 338-340 [78 Cal. Rptr. 491, 455 P.2d 419], and *People* v. *Hamilton, supra,* 71 Cal.2d 176, 179, 181-182, where we invalidated searches made *pursuant to warrants,* holding that the facts provided were insufficient. To uphold the warrantless search in the instant case would encourage officers to bypass the warrant procedure in making arrests.

In conclusion, the record fails to show that there was probable cause to arrest defendant prior to the search. The trial court specifically found that there was no consent to the search. The evidence obtained by the search should have been excluded, and without such evidence there was insufficient evidence to convict defendant.[3]

The judgment is reversed.

Wright, C. J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[2]The instant case cannot be distinguished from *Spinelli* on the ground that in the instant case the informant's statement was "confirmed" by the statements by the other officers. In the allegations of the supporting affidavit in *Spinelli,* the informant's statement was "confirmed" by the F.B.I.'s check on the two specified phone numbers and by the "knowledge" of federal and local law enforcement agents that defendant was a gambler. (*Spinelli* v. *United States, supra,* 393 U.S. 410, 413-414 [21 L.Ed.2d 637, 641-642].) And, as we have indicated, the "bald and unilluminating assertion[s] of suspicion" (*id.,* at p. 414 [21 L.Ed.2d at p. 642]) by the enforcement officers in each case are entitled to no weight, since they might be either baseless or based entirely on information from the informant.

[3]Defendant also contends that the trial court erred in refusing to require disclosure of the informer's identity. In the event of a retrial, the issue of disclosure should be decided by the trial court in accordance with the new procedure set forth in section 1042, subdivision (d) of the Evidence Code, enacted in 1969.

**McCOMB, J.**—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Wood in the opinion prepared by him for the Court of Appeal, Second Appellate District, Division One (*People v. Madden,* Crim. No. 15146, filed January 23, 1970, certified for non-publication).