Filed 11/16/15  P. v. Gallardo CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SULMA MARILYN GALLARDO,<br><br>    Defendant and Appellant. | 2d Crim. No. B257357<br>(Super. Ct. No. VA126705-01)<br>(Los Angeles County) |

A jury found Sulma Marilyn Gallardo guilty of robbery (Pen. Code, § 211), being an accessory after the fact (§ 32), and transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)).[1]  The jury also found true that a principal was armed with a firearm during the commission of the robbery.  (§ 12022, subd. (a)(1).)  The trial court found she suffered a prior conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)), and one prior serious felony conviction (§ 667, subd. (a)).

We reverse the accessory conviction (§ 32) because it is based on the same facts as the robbery conviction.  In all other respects, we affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

FACTS

David Narvez worked for a check cashing company delivering cash to its various establishments. On September 14, 2012, at approximately 10:00 a.m., Narvez withdrew $190,000 in cash from a bank, and drove south along Long Beach Boulevard. A pickup truck with no license plates cut in front of him and came to an abrupt stop. A Chevrolet Suburban struck Narvez from behind, blocking him in. A "Black man" got out of the Suburban and broke the passenger window of Narvez's vehicle with a hammer. The man pointed a handgun at Narvez and said, "[G[ive me the fucking money you motherfucker before I kill you." Narvez gave the man two bags containing a total of $66,000. The man returned to the Suburban and the pickup truck left the scene.

Narvez called 911. As Narvez was speaking to the 911 operator, an unidentified man in the background told Narvez the license plate number of the Suburban and that three Black men and one woman had been involved. Narvez relayed the information to the operator. The man left while Narvez was still talking to the operator. He did not identify himself or leave any contact information.

On September 21, 2014, the police stopped the Suburban. Gallardo was driving and Jason Dwight Andrews was in the passenger seat.

The police searched the Suburban and recovered two loaded semiautomatic handguns, four plastic bags filled with marijuana, a potato chip canister containing 11 bags of marijuana, 0.86 grams of methamphetamine, 1.26 grams of cocaine and a digital scale.

Gallardo and Andrews were taken into custody. After being advised of her rights, Gallardo agreed to talk to the police. She admitted that she owned the Suburban. She said on the morning of the robbery, a friend asked her to give Andrews a ride. She picked up Andrews and another man. Andrews told her to follow a black pickup truck. She followed the truck until it came to a stop. Andrews and the second man got out of her Suburban and ran to a vehicle that was stopped in front of the pickup truck. She did not know what the men were doing. The men returned to the Suburban holding firearms.

2

Andrews told her to drive away. They gave her $40 for gas and told her not to say anything. She said Andrews and another man owned the drugs and guns the police found in her Suburban when she was arrested.

<em>Defense</em>

Los Angeles County Deputy Sheriff Jennifer Gutierrez testified Narvez told her the man who robbed him came from the black pickup truck and returned to the black truck after the robbery.

A sheriff's department criminalist testified the nine-millimeter handgun did not contain Gallardo's DNA.

DISCUSSION

I.

Gallardo contends the trial court erred in denying her suppression motion.

Gallardo argues her arrest was not based on sufficiently reliable information. At the hearing on the suppression motion, Detective Arturo Spencer testified he spoke with Narvez at the location of the robbery. Narvez told Spencer that a witness handed him an envelope moments after the robbery. The witness told Narvez that the envelope had the license plate number of a vehicle involved in the offense. Spencer entered the number in the law enforcement data base.

Officer Michael Gallegos testified he was on patrol when he heard a radio broadcast that Gallardo's license plate had been detected by an automated license reader in Huntington Park. Gallegos later saw the Suburban and confirmed it was wanted in connection with an armed robbery. Gallegos called for backups. When they arrived, he stopped the Suburban.

Deputy Steven Johnson testified he arrived after the Suburban had been stopped. A strong odor of marijuana emanated from the car. He searched the car and recovered firearms, drugs and a scale.

3

The trial court denied the suppression motion finding that the information provided to Narvez by the witness was reliable, that officers had reasonable suspicion to detain Gallardo, and that the ensuing search of the Suburban was lawful.

Gallardo argues the information supporting her detention was insufficiently reliable because it came from an unknown person. She points out the detention was made on information passed through official channels. She relies on the *Harvey-Madden* rule that an officer making the detention may rely on official channels, but the prosecution must show the officer originally supplying the information had sufficient information to justify the detention. (*People v. Madden* (1970) 2 Cal.3d 1017; *People v. Harvey* (1958) 156 Cal.App.2d 516.) Here there was no violation of the so-called *Harvey/Madden* rule.

Our Supreme Court has explained what is necessary to justify an investigative stop or detention. "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience . . . to suspect the same criminal activity and the same involvement by the person in question." (*In re Tony C.* (1978) 21 Cal.3d 888, 893; *People v. Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 827.)

Under the appropriate circumstances, an anonymous tip can provide a reasonable suspicion sufficient to justify a detention. (See, e.g., *In re Richard G.* (2009) 173 Cal.App.4th 1252, 1257-1258 [anonymous caller reporting late night disturbance involving firearm and describing the people involved and their clothing].) Just as in *Richard G.*, reliability of the information surrounding the robbery established sufficient ground for the arresting officer to stop Gallardo's vehicle.

4

We disagree with Gallardo's assertion that the supporting facts here consist of nothing more than some numbers written on an envelope given to the victim by an unknown person. The facts include that the victim reported a robbery and that the unknown person gave the victim the license plate numbers at the scene moments after the robbery occurred. There is nothing to suggest the license plate numbers were the product of a hoax, or that the unknown person was motivated by anything other than a desire to assist the victim and the police. Any reasonable police officer would make an investigative stop or detention based on that information.

The trial court properly denied the motion to suppress.

## II.

Gallardo contends the trial court erred in admitting the unidentified witness's hearsay statement heard on the victim's 911 call.

Over Gallardo's objection, the trial court admitted the unidentified witness's statements under the spontaneous statement exception to the hearsay rule. Evidence Code section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] [p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] [w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." We must uphold the trial court's determination that the statements are admissible under Evidence Code section 1240 if it is supported by substantial evidence. (*People v. Brown* (2003) 31 Cal.4th 518, 541.)

Gallardo claims there is no evidence the unidentified witness was under the "stress of excitement" caused by witnessing the robbery. She argues not every witness at the scene of the crime may be assumed to be in an excited condition. That may be true of many crimes. But the trial court could reasonably conclude that anyone who witnessed an armed robbery during which a handgun was pointed at the victim would be in an excited condition. Finally, that the 911 call took place two minutes after the robbery shows that the witness was still under the influence of the event when he made the

5

statements. The trial court could reasonably conclude that the witness's statements are admissible under Evidence Code section 1240.

## III.

Gallardo contends the trial court's failure to instruct on the firearm enhancement to count 1 (robbery) requires reversal.

The People concede that it would have been better had the trial court instructed with CALCRIM No. 3115. Nevertheless, the People point out that other instructions properly instructed the jury on all elements of the firearm enhancement.

The jury found that a principal was armed with a firearm during the commission of the robbery. The trial court instructed the jury that "principals" are those who directly and actively commit the crime or those who aid and abet in its commission; that "firearm" includes a pistol or revolver; and that "armed with a firearm" means "knowingly to carry a firearm or have it available for offensive or defensive use." The jury had all the information it needed to decide the enhancement. Due process is not violated where all the information pertaining to an enhancement in an omitted instruction is provided in other properly given instructions. (*People v. Friend* (2009) 47 Cal.4th 1, 54.)

Gallardo argues the jury could not have pieced together the information from various instructions. But there is no reason why it could not have. The instructions must be considered as a whole and we assume the jurors are capable of correlating and following the instructions. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

## IV.

Gallardo contends that the trial court erred in relying on hearsay and undertaking judicial fact finding in finding her prior conviction to be a strike.

The information alleged that Gallardo had suffered a prior felony conviction for violating section 245, subdivision (a)(1), and that the conviction constitutes a strike within the meaning of the three strikes law.

6

Prior to the jury's verdict on the substantive offenses, Gallardo waived her right to a jury trial on the prior conviction allegation. In so waiving, she acknowledged that she "will not be entitled in any manner whatsoever to a jury trial concerning that prior conviction."

The trial court examined the minute order showing Gallardo pled no contest to violating section 245, subdivision (a)(1). The trial court also considered, over Gallardo's hearsay objection, the preliminary hearing transcript from that case. During the preliminary hearing, the victim testified that Gallardo pointed a knife at him and punched him while holding the knife. The victim said the knife might have nicked him by accident.

At the time Gallardo pled no contest to violating section 245, subdivision (a)(1), the offense could be committed either by assaulting another person with a deadly weapon or by use of force likely to cause great bodily injury. Only where the offense is committed by use of a deadly weapon does it constitute a serious felony, and thus a strike under the three strikes law. (§ 1192.7, subd. (c)(23), (31); *People v. Delgado* (2008) 43 Cal.4th 1059, 1065.) The trial court found true that Gallardo suffered a prior conviction and that it constituted a strike.

Gallardo relies on *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, for the proposition that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Gallardo argues that the question whether her prior conviction constitutes a strike should have been submitted to a jury. But Gallardo ignores her waiver of a jury trial "in any manner whatsoever" relating to the prior conviction allegation.

In any event, even had Gallardo not waived a jury, the question whether her prior conviction constitutes a strike would still be a matter for the trial court.

In *People v. McGee* (2006) 38 Cal.4th 682, the California Supreme Court determined the court should decide whether a prior conviction constitutes a strike. There,

7

the defendant had prior robbery convictions in Nevada.  A prior conviction in a foreign jurisdiction is a strike in California only if the convictions involved conduct that would also constitute a strike under California law.  (*Id.* at p. 691.)  The court noted there are distinctions between the elements of robbery in Nevada and California such that "it was at least theoretically possible that defendant's Nevada convictions involved conduct that would not constitute robbery under California law."  (*Id.* at p. 688.)  The trial court examined various documents from the Nevada convictions, including transcripts from preliminary hearings.  The court concluded that the defendant's conduct in the Nevada robberies constituted strikes.  (*Id.* at p. 690.)  The Court of Appeal reversed, concluding that under *Apprendi* the question should have been submitted to the jury.

Our Supreme Court reversed the Court of Appeal.  The court held that the defendant was not entitled to have a jury decide whether his Nevada robbery convictions qualified as strikes under California law.  In reversing, our Supreme Court stated:  "[W]e observe that the matter presented is not, as the Court of Appeal appears to have assumed, a determination or finding 'about the [defendant's earlier] conduct itself, such as the intent with which a defendant acted.'  Instead, it is a determination regarding the nature or basis of the defendant's *prior conviction*—specifically, whether *that conviction* qualified as a conviction of a serious felony.  California law specifies that in making this determination, the inquiry is a limited one and must be based upon the record of the prior criminal proceeding, with a focus on the elements of the offense of which the defendant was convicted.  If the enumeration of the elements of the offense does not resolve the issue, an examination of the record of the earlier criminal proceeding is required in order to ascertain whether that record reveals whether the conviction realistically may have been based on conduct that would not constitute a serious felony under California law."  (*People v. McGee*, *supra*, 38 Cal.4th at p. 706.)

After *McGee*, the United States Supreme Court decided *Descamps v. United States* (2013) _ U.S. _ [186 L.Ed.2d 438] (*Descamps*).  *Descamps* involves sentence enhancements under the federal Armed Career Criminal Act (ACCA).  (18

8

U.S.C. § 924(e).)  The ACCA provides for sentence enhancements for federal defendants who have prior convictions for certain felonies, including burglary.  To determine whether a prior conviction constitutes one of those crimes, courts use the so-called "categorical approach."  They compare the statutory elements of the crime constituting the prior conviction with the elements of a "generic crime"; that is, the offense as it is commonly understood.  The defendant had prior California convictions for burglary.  The generic crime of burglary has unlawful entry as an element.  But the California statutory elements for burglary do not include unlawful entry.  (§ 459.)  Does the defendant have the right to a jury trial on the question whether his prior burglaries involved an unlawful entry?

In deciding that question, *Descamps* distinguished two types of statutes.  One type of statute is a so-called "divisible statute."  That kind of statute sets out one or more elements of the offense in the alternative.  If one alternative matches an element in the generic offense but the other alternative does not, the court may consult "a limited class of documents, such as indictments and jury instructions," to determine which alternative formed the basis of the prior conviction.  (*Descamps*, *supra*, _ U.S. at p. _ [186 L.Ed.2d at p. 449].)  Then the court can apply the categorical approach by comparing the elements of the prior conviction with the elements of the generic crime.  (*Ibid.*)

The second type of statute is a so-called "indivisible statute"; that is, a statute that does not contain alternative elements.  A problem arises when an indivisible statute criminalizes a broader scope of conduct than the generic offense.  Thus, for example, California's burglary statute, by not having unlawful entry as an element, criminalizes more conduct than a generic burglary.  The court held that a sentencing court is not authorized to go beyond the elements of the prior conviction to make a finding of fact that the defendant's conduct constituted a generic crime; for example, that he made the unlawful entry necessary for generic burglary.  The court stated:  "The Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts,

9

unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances. [Citation.] Similarly, . . . when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements . . . ." (*Descamps*, *supra*, _ U.S. at p. _ [186 L.Ed.2d at p. 457].)

The recent case of *People v. Saez* (2015) 237 Cal.App.4th 1177, like *Descamps*, involved an indivisible statute. In *Saez*, the defendant had suffered prior convictions in Wisconsin. The prior convictions were under statutes that criminalized a broader scope of conduct than similar California statutes. *Saez* held that under *Descamps* the sentencing court cannot use the record of conviction to make a finding of fact that the defendant's conduct would have been a strike in California. (*Saez*, at pp. 1207-1208.)

This case is different. Here, we are concerned with a "divisible statute." The elements of the offense are stated in the alternative. Under *Descamps*, the sentencing court may consult extrinsic documents to determine which alternative formed the basis of the prior conviction. A jury determination is not required.

The next question is whether the trial court erred in basing its determination on the preliminary hearing transcript. *Descamps* states the sentencing court may consult "a limited class of documents, such as indictments and jury instructions." (*Descamps*, *supra*, _ U.S. at p. _ [186 L.Ed.2d at p. 449].) But nothing in *Descamps* excludes the preliminary hearing transcript from that class of documents.

Gallardo acknowledges that in *People v. Reed* (1996) 13 Cal.4th 217, 220, our Supreme Court held that statements from a preliminary hearing transcript that fell within a hearing exception could be used to prove a defendant's prior assault conviction involved the personal use of a dangerous or deadly weapon. Gallardo argues, however, that *McGee* overruled *Reed*. In support of her argument, Gallardo cites *McGee's* statement that the inquiry is to the nature of the conviction, not a relitigation of the defendant's prior conduct. (*People v. McGee*, *supra*, 38 Cal.4th at p. 706.) But nothing in *McGee* prohibits the use of a preliminary hearing transcript to determine the nature of

10

the conviction. In fact, *McGee* upheld the trial court's determination that was based on documents including transcripts from preliminary hearings. (*Id.* at p. 689.) Moreover, our Supreme Court has subsequent to *McGee* cited *Reed* with approval. (See *People v. Delgado*, *supra*, 43 Cal.4th at pp. 1065, 1071, fn. 5.) We are bound to follow *Reed.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Finally, the trial court properly overruled Gallardo's hearsay objection. Evidence Code section 1291, subdivision (a)(2) provides: "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] [t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

Gallardo argues that her interests and motives at the preliminary hearing were not the same as her interests and motives at the trial of the three strikes allegation. But her interests and motives need not be identical, only similar. (*People v. Zapien* (1993) 4 Cal.4th 929, 975.) Gallardo had an interest and motive at the preliminary hearing to challenge evidence that she used a knife. The use of a knife satisfied both the use of a deadly weapon element and the likelihood to inflict great bodily injury element of the offense.

Gallardo argues there was a showing that the witness who testified at the preliminary hearing was unavailable. But our Supreme Court rejected that argument in *Reed*. Because the prosecution is prevented from presenting any evidence outside the record of conviction, a witness who testified at the hearing is unavailable as a matter of law. (*People v. Reed*, *supra*, 13 Cal.4th at p. 226.)

V.

The People concede that Gallardo's conviction for being an accessory after the fact must be reversed.

11

The conviction for being an accessory was based on the same evidence underlying the robbery conviction. A conviction as both a principal and an accessory is prohibited where both convictions rest on essentially the same acts. (*People v. Mouton* (1993) 15 Cal.App.4th 1313, 1323.)

Gallardo's conviction for being an accessory after the fact (§ 32) is reversed. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

12

Thomas I. McKnew, Jr., Judge

Superior Court County of Los Angeles

_____

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Noah P. Hill, Deputy Attorney General, for Plaintiff and Respondent.