Filed 10/29/25  P. v. Benson CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JASON BENSON,<br><br>　　　Defendant and Appellant. | A172029<br><br>(San Francisco County<br> Super. Ct. No. 24012487) |

Jason Benson appeals from a judgment after a jury trial convicting him of carrying a concealed firearm (Pen. Code,[1] § 25400, subd. (a)(2)) and carrying a loaded firearm (§ 25850, subd. (a)); the court suspended imposition of his sentence and placed him on probation.  His counsel requests that this court independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).[2]  Benson was informed of his right to file a supplemental brief and has not done so.  Upon our independent review of the record pursuant to *Wende*, we conclude there are no arguable appellate issues requiring further briefing and affirm the judgment.

---

[1] Further undesignated statutory references are to the Penal Code.

[2] Benson's counsel initially filed an opening brief that he subsequently moved to strike and replace with a *Wende* brief.  We granted the motion.

1

## BACKGROUND

On July 6, 2024, Benson was walking toward the Tenderloin neighborhood in San Francisco, intending to purchase some fentanyl to alleviate his withdrawal symptoms, when he noticed a shoe box that appeared to be brand new. Benson opened the box and found inside a "gnarly garment" that Benson moved aside, only to discover a firearm. Benson thought he needed to remove the firearm from the neighborhood because "[t]here's a lot of mentally ill people in that area, a lot of drug addicts in that area, a lot of . . . the kind of people you wouldn't want around with a handgun, myself included," and "the last thing [he] wanted was the wrong people to get ahold of it." Benson placed the firearm in his pocket and decided to throw it into the San Francisco Bay. But, given his withdrawal symptoms, Benson decided to "get well" and purchase fentanyl to use "first."

Benson walked in the opposite direction of the water for approximately half an hour into an area that is a "known drug area," found someone who "goes by the name of Bobby," and purchased 40 dollars' worth of fentanyl. Bobby saw the firearm in Benson's pocket as Benson retrieved money to pay for the fentanyl. Benson explained that he found the gun and planned "to get rid of it," and Bobby offered to purchase the gun for three and a half grams of fentanyl and $200. Benson refused the offer but allowed Bobby to hold the firearm until Benson became anxious to get "this damn thing off of me." He took the firearm back from Bobby and walked up the street to use the fentanyl.

In the meantime, Officer Alexis Gomez received a phone call from an informant reporting someone in the Tenderloin neighborhood "was currently

2

armed with a firearm." Gomez relayed that information to Officer Paloma Ospital.

Approximately 13 minutes after Gomez received the tip, Ospital observed a subject that matched the suspect description—Benson. Officers Ospital, Brett Bruneman, John Quinlan, and Chiluugin Tumurchudur approached Benson. Bruneman and Ospital placed Benson in handcuffs. Quinlan conducted a pat search for weapons and "immediately located a firearm in Mr. Benson's left jacket pocket."[3] Quinlan had "reached directly for the left pocket" because he "saw a bulge there. It looked like there was a weight, something heavy in the pocket." Although Benson had initially denied possessing a firearm when Quinlan asked, when Quinlan's hand was on the firearm during the pat search, Benson admitted it was a weapon.

Quinlan rendered the firearm safe. The firearm was a "ghost gun" without a serial number. There were no bullets in the chamber of the firearm, but it was loaded with "rounds in the magazine" and with one bullet missing.

After his arrival at the police station, Gomez and Ospital read Benson his *Miranda*[4] rights, which Benson waived, and he agreed to be interviewed. In the interview, Benson said he found the firearm in a shoe box "approximately one hour before police contacted him" and "mentioned throwing it in the water." He did not mention "Bobby" or that "Bobby" had

---

[3] A pipe used to smoke fentanyl, money, a lighter, and a backpack were also found on Benson.

[4] *Miranda v. Arizona* (1966) 384 U.S. 436.

attempted to purchase the firearm.  Benson stated he did not know if the firearm was loaded.

After being charged with multiple firearms-related offenses, Benson filed a motion under section 1538.5 to be heard in connection with the preliminary examination; he sought to suppress the items seized and his statements made to police raising a *Harvey-Madden*[5] objection to the reliability of the informant's tip and that the basis for the pat search was insufficient.  Benson also orally requested an in camera hearing pursuant to Evidence Code section 1042, subdivision (d) on the issue of the identity of the confidential informant, because the individual was a witness material to the motion to suppress.  The court denied Benson's motion for an in camera hearing and for the disclosure of the informant because the court found "the confidential informant is not needed" where the "charges on the complaint individually can stand on their own because he's in possession of a firearm," and the court was "satisfied based upon the evidence that was produced in open court that the information was received from a reliable informant and in my discretion I'm not going to require such disclosure."  After considering the testimony of Gomez and Ospital and arguments from the parties, the court also denied the suppression motion, finding the pat search leading to the recovery of the gun was necessary for the officers' safety and, after the officers discovered an existing warrant for Benson, they arrested him and interviewed him.  Benson was held to answer on five felony counts that were later charged by way of information:  possession of a firearm by a felon (§ 29800, subd. (a)(1); count 1); persons prohibited from purchasing firearms (§ 29825, subd. (a); count 2); concealed firearm on person—unlawful

---

[5] *People v. Harvey* (1958) 156 Cal.App.2d 516; *People v. Madden* (1970) 2 Cal.3d 1017.

4

possession/prohibited class (§ 25400, subd. (a)(2); count 3); carrying loaded firearm—unlawful possession/prohibited class (§ 25850, subd. (a); count 4); and possession of ammunition (§ 30305, subd. (a)(1); count 5). The information further alleged seven circumstances in aggravation under California Rules of Court, rule[6] 4.421 (rule 4.421(a)(2) [armed with or used a weapon], rule 4.421(a)(10) [large quantity of contraband], rule 4.421(b)(1) [engaged in violent conduct], rule 4.421(b)(2) [prior convictions are numerous or increasing in seriousness], rule 4.421(b)(3) [prior term in prison or jail under § 1170, subd. (h)], rule 4.421(b)(4) [was on probation when crime was committed], rule 4.421(b)(5) [prior performance on probation unsatisfactory]; § 1203, subd. (e)(4) [previously convicted twice of a felony]), along with a probation ineligibility factor under section 1203, subdivision (e)(4). Benson pleaded not guilty to all charges, denied all enhancements and factors in aggravation, and requested the matter be set for trial.

During a conference discussing motions in limine prior to the start of trial in October 2024, Benson renewed his argument requesting disclosure of the confidential informant, who he asserted was a material witness for trial, therefore requiring an in camera hearing with Gomez. The trial court granted the in camera hearing request.

The following day, Benson expanded his request to include an additional in camera hearing with the informant. The trial court stated that it was "passing on that right now. I have Officer Gomez coming, I'll start with that, and then take up that request later on should it become material." The trial court then conducted the in camera hearing with Gomez.[7] When

---

[6] Further reference to rules are to the California Rules of Court.

[7] Benson failed to include the sealed in camera hearing transcript and the videos of his arrest and police station *Miranda* interview (People's exhibits 1a–1c) in his appellate record, thus this court separately secured the

5

court reconvened the following day, Benson renewed his request for a separate in camera hearing with the informant. The trial court denied the request directly because an informant's presence is "not automatically required"; it also denied the request to order disclosure of the confidential informant's identity because there was no reasonable possibility that the informant possesses exculpatory information where "any testimony the informant would offer in this case would be inculpatory and would tend to negate rather than support any defense of transitory or fleeting possession."

On the same date, the court conducted a *Miranda* hearing per Evidence Code section 402 and found that "the *Miranda* warnings were given, that Mr. Benson answered in the affirmative that he understood, and after hearing those warnings he made a voluntary statement to the police. I therefore find that his waiver of rights was knowing, intelligent and voluntary. He certainly seemed coherent. . . . So I also find that the statements were voluntarily given."

After the jury was selected and sworn, Ospital, Quinlan, and Gomez testified for the prosecution. Benson testified on his own behalf.

In closing argument, the prosecutor stated that "All you've heard is the words of a liar, talk about --." Benson objected; the court sustained the objection and instructed the jury to disregard the statement. After closing arguments, Benson moved for a mistrial based on prosecutorial misconduct because the prosecutor referred to Benson as a "liar." The court denied the

---

evidence from the Clerk of the San Francisco County Superior Court, of which we take judicial notice. (Rule 8.155(a)(1) ["At any time, on motion of a party or its own motion, the reviewing court may order the record augmented to include: [¶] (A) Any document filed or lodged in the case in superior court"]; Evid. Code, § 452, subd. (d) ["Judicial notice may be taken of . . . [¶] . . . [¶] (d) Records of (1) any court of this state"].)

6

motion and found "it's a fair comment on the evidence for [the prosecutor] to say that Mr. Benson was lying in his testimony. I think there was enough inconsistency that is fair argument from the evidence." The court also found that even if it was error, the court had sustained Benson's objection at the time of closing argument and instructed the jury to disregard it.

The jury found Benson guilty of carrying a concealed firearm (count 3) and carrying a loaded firearm (count 4) and found true as to each count the allegations that he was previously convicted of a felony and was prohibited by court order of possessing a firearm. The jury found Benson not guilty of possession of ammunition by a prohibited person (count 5) and was unable to reach a verdict on possession of a firearm by a felon and persons prohibited from purchasing firearms (counts 1 & 2). The court declared a mistrial as to counts 1 and 2 and granted the People's motion to dismiss the counts in the interest of justice pursuant to section 1385.

Benson waived his right to a jury as to the alleged factors in aggravation. Following a bench trial, the court found two aggravating factors to be true: Benson was on probation when the crime was committed (rule 4.421(b)(4)), and his prior performance on probation was unsatisfactory. (Rule 4.421(b)(5).)

Benson requested to dismiss the aggravating factors in furtherance of justice pursuant to section 1385 in light of the "ample" time he had spent in custody. The court denied the request but suspended imposition of sentence and placed Benson on formal probation for a period of two years, with credit for time served and with terms and conditions of probation including the order to comply with an individualized treatment and rehabilitation plan as

7

directed by probation. The court found "it would be disproportionate to impose the fines and fees here and I order them suspended."

Benson timely appealed.

## DISCUSSION

Pursuant to *Wende*, we are required "to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous." (*Wende*, *supra*, 25 Cal.3d at p. 441.) Our independent review of the entirety of the record including but not limited to the motion to suppress, the motion to disclose the identity of the confidential informant, the request for an in camera hearing with the confidential informant, the sealed in camera proceedings, the *Miranda* hearing, the mistrial motion, the jury trial, and all related proceedings pursuant to *Wende* has disclosed no reasonably arguable issues requiring further briefing.

## DISPOSITION

The judgment is affirmed.

DESAUTELS, J.

We concur:

RICHMAN, ACTING P. J.

MILLER, J.

*People v. Benson* (A172029)