[No. B172600. Second Dist., Div. Four. Oct. 25, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
RENE WINSLOW, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of footnote 2 and part 2.

COUNSEL

Marcia C. Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and William T. Harter, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**GRIMES, J.**—Rene Winslow appeals from the judgment entered following a jury trial that resulted in his conviction of committing a lewd act upon a child under the age of 14 years (Pen. Code, § 288, subd. (a))[1] and a finding that he kidnapped the victim and "the movement of the victim substantially increased the risk of harm" beyond that inherent in the underlying crime (§ 667.61, subds. (a) & (d)(2)). He was sentenced to prison for 25 years to life. The trial court also imposed a $200 restitution fine (§ 1202.4, subd. (b)) and a $200 parole revocation fine (§ 1202.45).[2]

Appellant contends the trial court committed reversible error by finding the victim was unavailable for the purpose of allowing introduction of his

---

[1] All further section references are to the Penal Code unless otherwise indicated.

[2] * . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 464.

preliminary hearing testimony at trial. He further contends the court committed prejudicial misconduct by instructing on facts not in evidence, "which implied a judgment about [the victim's] credibility and situation."

Based on our review of the record and applicable law, we affirm the judgment.

As we shall discuss, appellate courts should independently review a trial court's determination that a witness is unavailable due to then existing mental illness or infirmity or because crime-induced mental trauma renders the witness unable to testify without suffering substantial trauma. (Evid. Code, § 240, subds. (a)(3), (c).)

## FACTUAL SUMMARY

We review the evidence in the light most favorable to the People and presume the existence of every fact the trier could reasonably deduce from the evidence that supports the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) The following summary is based on this appellate standard of review.

On September 17, 2002, 13-year-old Daveon, and his 9-year-old brother Dijon, were playing at Centinela Park in Inglewood. Daveon had cerebral palsy and learning deficiencies, which necessitated a special program and tutoring at school. Appellant sat down on the bench with Daveon and began talking to him. Daveon then went over and asked Dijon if he wanted to go with appellant in the car. After giving a negative response, Dijon played with other children. A few minutes later, he looked around but did not see his brother or appellant and went home.

Dijon told their mother that a male stranger had taken Daveon from the park. When he subsequently returned to the park with his mother and police, he saw Daveon, who appeared to be scared, walking into the park.

Inglewood Police Officer Salmon spoke with Daveon, who was "sad, depressed" and initially refused to tell the officer where he had been. Daveon was "[v]ery emotional, upset," and "almost embarrassed about what he was saying." Although reluctant to speak at first, after repeated questions, Daveon finally related what had happened.

Daveon explained that while he and his brother were at the park, appellant approached and asked him to look at pictures of a nude African-American female. He left with appellant in his car, because he was scared. Appellant drove to a parking area and pulled into a stall, which was about three-quarters

to a mile away from the park. After placing the seats flat, appellant sodomized him 10 to 20 times until appellant climaxed. Afterwards, he dropped off Daveon in the vicinity of the park.

During the sexual assault examination, Daveon related to the nurse that earlier at the park, an African-American male wanted to show him pictures of a naked woman; he went with the male in his vehicle, and the male sodomized him. The multiple tears outside his anus and bleeding three inches inside his anus were basically consistent with Daveon's description of the sexual assault. Appellant's DNA was found on swabs taken from Daveon's scrotum, penis, and pubic hair.

Daveon's preliminary hearing testimony[3] reflects that after appellant showed him pictures of a naked woman, he offered to take Daveon to see the woman. Daveon put his ball and scooter in the back seat and got in the front seat before appellant drove off. Eventually, appellant drove to an alley and parked the car. Daveon, who was scared, pulled down his pants and shorts at appellant's directive. Appellant put lotion on his penis and sodomized him for about 10 minutes.

Appellant drove back to the park but dropped Daveon at the corner away from where Daveon said he saw his mother. Daveon told the police there, and later the nurse, what had happened.

On another day, he told his mother, who was driving, that he saw appellant in the left turn lane. Daveon's testimony in this regard was corroborated by his mother, who wrote down and gave police the car license, and by Dijon.

Appellant was driving the same car when arrested. A small bottle of lotion was recovered from a front shirt pocket. In the car trunk, the police found Daveon's basketball and scooter, which the boys had taken to the park with them. A backpack, which contained five photographs of naked African-American females in various poses, was recovered from the passenger compartment.

Appellant's testimony basically was that his encounter with Daveon was consensual and nonsexual. While he was jogging, Daveon, after several attempts, flagged him down twice and asked appellant to buy him something to drink and red shoelaces. After taking Daveon to three stores, appellant decided to return to the park but he had to urinate first and stopped the car in an alley. As he began to urinate into a bottle, he saw Daveon viewing pictures of a naked female, which had been under a towel on the seat. He denied telling Daveon he would take him to the woman's house and introduce him to her.

---

[3] In lieu of Daveon testifying at trial, his preliminary hearing testimony was read to the jury.

When Daveon pulled down his pants and masturbated, appellant also began to masturbate. After ejaculating, appellant wiped himself with napkins, which he put on the towel. Daveon took the napkins and rubbed the ejaculate "on his behind." Appellant told him not to do that. Daveon then wiped himself with the napkins. Appellant denied Daveon touched him or that he ever touched Daveon. He also denied telling Daveon to take down his pants or threatening him.

## DISCUSSION

### 1. *Unavailability of Witness Finding Not Error*

Appellant contends the trial court committed reversible error in finding Daveon was unavailable as a witness to testify at trial. There was no error.

"The United States Supreme Court has established that a defendant's Sixth Amendment right to confrontation is a fundamental right, applicable to the states through the Fourteenth Amendment. (*Pointer v. Texas* (1965) 380 U.S. 400, 13 L.Ed.2d 923, 85 S.Ct. 1065.) The California Constitution now provides a specific guarantee of the right to confrontation: 'The defendant in a criminal cause has the right . . . to be confronted with the witnesses against the defendant.' (Cal. Const., art. I, § 15.) A similar guarantee is codified in section 686, subdivision 3, of the Penal Code, which provides that in a criminal action the defendant is entitled 'to produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court . . . .' " (*People v. Stritzinger* (1983) 34 Cal.3d 505, 515 [194 Cal.Rptr. 431, 668 P.2d 738].)

█ A traditional exception to this confrontation requirement exists where a witness is unavailable and has given testimony at a prior judicial proceeding against the same defendant at which time the witness was subject to cross-examination by that defendant. (*People v. Stritzinger, supra*, 34 Cal.3d at p. 515.)

#### a. *The Witness Unavailability Hearing*

In a pretrial motion, the People sought a ruling that Daveon's preliminary hearing testimony could be admitted at trial, because Daveon was unavailable as a witness. (Evid. Code, §§ 240, 1290, 1291.)

At the hearing, Dr. Buford Gibson, a psychiatrist, testified that he had been treating Daveon for about a year regarding his continuing problems arising from his abduction and sexual molestation. He diagnosed Daveon as suffering from posttraumatic stress syndrome and explained: "It's a major disorder that may occur after some life-threatening or horrifying incident occurs to an individual and they react with severe stress syndromes that are persistent and can be disabling. It's characterized by having recurrent, intrusive thoughts, flare-ups of anxiety, flashbacks to the event and things of that nature."

He opined that Daveon was "educationally challenged." He estimated Daveon's I.Q. to be around 65 (a normal I.Q. would be "closer to 100") and that he was developmentally four or five years behind his chronological age. He explained that he had to arrange for a home tutor, which was in lieu of his special education program at school, because of Daveon's emotional state arising from the incident.

Dr. Gibson opined that it would be "damaging to his emotional state at this current time" for Daveon to testify at trial. Daveon had suffered from nightmares based on the incident. A few days earlier, Daveon informed him that he did not want to return to court, because he already had talked about the incident and was afraid his nightmares "would come back" and "would impact his behavior." The doctor specifically opined that if Daveon were to testify and relive the event, the nightmares would recur and affect his course of recovery, and that his recovery would suffer a setback.

During cross-examination, Dr. Gibson reaffirmed that requiring Daveon to testify at trial would be detrimental to his "mental status in his recovery."

In granting the motion, the court found "the likelihood that being forced to engage in having to testify in front of a jury would substantially be likely to result in an increased level of harm to [Daveon] and would further aggravate an already serious psychological problem that he's suffering."

### b. Standard of Review

"We traditionally review findings of fact under a deferential standard of substantial evidence, and findings of law under a de novo standard. (*People v. Cromer* (2001) 24 Cal.4th 889, 893–894 [103 Cal.Rptr.2d 23, 15 P.3d 243] [(*Cromer*)].) Mixed questions of law and fact, such as whether a given factual basis . . . is adequate . . . may be subject to deferential or de novo review. (*Cromer*, at p. 894.)" (*People v. Holmes* (2004) 32 Cal.4th 432, 442 [9 Cal.Rptr.3d 678, 84 P.3d 366].)

In *Cromer*, the question was whether the prosecution had proven due diligence in locating a missing witness whose preliminary hearing testimony was read to the jury pursuant to Evidence Code section 240(a)(5). *Cromer* held the standard of review was de novo (independent) and disapproved *People v. Turner* (1990) 219 Cal.App.3d 1207 [268 Cal.Rptr. 686] to the extent it "contain[ed] language inconsistent with this conclusion . . . ." (*Cromer, supra*, 24 Cal.4th at p. 901, fn 3 [103 Cal.Rptr.2d 23, 15 P.3d 243.) *Turner* applied an abuse of discretion standard in reviewing whether the trial court properly found the witness to be unavailable under subdivisions (a)(3) and (c) of Evidence Code section 240, which are the same subdivisions at issue here. (*Turner, supra*, at pp. 1212–1214.)

The holding in *Cromer*, that a trial court's due diligence determination is subject to independent review, is consistent with the usual practice in reviewing a trial court's decision of a mixed question of fact and law that implicates the constitutional right to confront a witness at trial. (*Cromer, supra*, 24 Cal.4th at p. 901.) This case presents the question whether the prosecution proved the absent witness was unavailable due to a mental condition. There is no basis on which to distinguish *Cromer*; like the review of a trial court's finding under section 240, subdivision (a)(5) analyzed in *Cromer*, the review of a finding under section 240, subdivisions (a)(3) and (c) may guide law enforcement authorities, unify precedent, and stabilize the law. (24 Cal.4th at p. 901.) Accordingly, we will independently review the trial court's ruling here that Daveon was unavailable.

### c. Burden to Show Then Existing Mental Illness or Infirmity or Risk of Substantial Trauma to Witness

█ The People have the burden of proving by competent evidence that the witness is unavailable before a witness's preliminary hearing testimony may be admitted at trial. (*People v. Stritzinger, supra*, 34 Cal.3d at p. 516; *People v. Williams* (1979) 93 Cal.App.3d 40, 51 [155 Cal.Rptr. 414].) This burden of proof is met by showing the unavailability of the witness through a preponderance of the evidence. (*Ibid.*)

In *People v. Gomez* (1972) 26 Cal.App.3d 225 [103 Cal.Rptr. 80], the court concluded that where the unavailability of a declarant is based on a claim of an incapacitating mental condition which exists at the time of trial, "the illness or infirmity must be of comparative severity; it must exist to such a degree as to render the witness's attendance, or his testifying, *relatively impossible* and not merely inconvenient." (*Id.* at p. 230, italics added.) In the context of mental illness or infirmity, the phrase "relatively impossible" to testify does not mean it is impossible to elicit the testimony due to insanity or

coma or other total inability to communicate. Rather, the phrase includes the relative impossibility of eliciting testimony without risk of inflicting substantial trauma on the witness.

In *Gomez*, the defendant was convicted of unlawful sexual intercourse with a female under the age of 18 (§ 261.5). (*People v. Gomez, supra*, 26 Cal.App.3d at p. 227.) The victim had just turned 15 years old before the crime and was admitted to Camarillo State Hospital about a month later. Two psychiatrists testified regarding her availability as a witness. Dr. Martin, her treating physician, testified "she was very vulnerable to stress; she had a tendency to psychomotor seizures which were difficult to diagnose and treat; she had shown significant improvement although such was rather 'delicate and tedious'; in his opinion there was a 'strong possibility' that it would be detrimental to her welfare to appear in court. While under his care at the hospital, she had 'become rather hysterical with minimal provocation.' He concluded she would become 'very vulnerable and regressing backwards and wipe out the improvement that she's shown . . . and . . . as her physician, I don't want to risk that happening.' " (*Id.* at p. 228.)

Dr. Rieger, who had reviewed the victim's records and whose duty was "to decide whether a child should be admitted to the hospital," opined that "coming to court and testifying 'is a very traumatic experience to a child' such as this one. He concluded she would be 'definitely affected' by it and he 'would strongly recommend against it'; he was 'greatly concerned that it would grossly affect the child's present and possibly future health, mental health . . . . I would be very concerned over the consequences which might ensue from her appearing here under such stress or conditions.' " (*People v. Gomez, supra*, 26 Cal.App.3d at p. 228.)

██  When viewed in context, the reference to "relatively impossible and not merely inconvenient" to testify thus pertains to the severity (or degree) of trauma which might be inflicted on the child if she were to testify. In other words, where substantial trauma would ensue from the declarant testifying, it is "relatively impossible" for him or her to testify, and thus, the declarant is unavailable as a witness based on "mental illness or infirmity." (Evid. Code, § 240, subd. (a)(3); see *People v. Stritzinger, supra*, 34 Cal.3d at p. 518 [the determination whether a witness is unavailable due to mental illness or infirmity "generally calls for expert opinion, with supporting reasons, as to the likely effect of the court appearance on the physical or mental health of the witness"]; *People v. Williams, supra*, 93 Cal.App.3d at p. 54 [distinguishing *Gomez* based on absence of "credible evidence . . . to support a finding that, if required to testify, [the witness] would suffer any *substantial impairment* to her mental or physical health," italics added].)

Twelve years after the decision in *People v. Gomez*, the Legislature amended Evidence Code section 240 to add crime-induced physical and mental trauma under the new subdivision (c) as a reason why a declarant may be unavailable as a witness. (Stats. 1984, ch. 401, § 1, p. 1751.) "Expert testimony which establishes that physical or mental trauma resulting from an alleged crime has caused harm to a witness of sufficient severity that the witness is . . . unable to testify without suffering *substantial trauma* may constitute a sufficient showing of unavailability pursuant to paragraph (3) of subdivision (a). As used in this section, the term 'expert' means a physician and surgeon, including a psychiatrist . . . ." (Evid. Code, § 240, subd. (c), italics added.)

### d. *Substantial Trauma Renders Daveon Unavailable*

Initially, we conclude substantial evidence supports the trial court's factual findings that requiring Daveon to testify at trial would "substantially be likely to result in an increased level of harm to [him] and would further aggravate an already serious psychological problem that he's suffering."

Dr. Gibson was not simply a forensic psychiatrist offering expert trial testimony. He was Daveon's treating physician and had treated Daveon for a year. He was intimately familiar with Daveon's mental and emotional condition. He explained that Daveon suffered from posttraumatic stress syndrome, a "major disorder," which manifests in recurrent flashbacks of the incident, among other symptoms, and involves "severe stress syndromes that are persistent and can be disabling."

He opined that for Daveon to testify at trial would be "damaging to his emotional state at this current time." He explained that Daveon's nightmares would return and set back his recovery.

We independently conclude that Daveon was "unavailable as a witness" because of mental illness or infirmity and because he was "unable to testify without suffering substantial trauma." (Evid. Code, § 240, subds. (a)(3) & (c).) The trial court therefore properly allowed Daveon's preliminary hearing testimony to be read to the jury.

### 2. *Trial Court's Comments Properly Neutral**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 464.

## DISPOSITION

The judgment is affirmed. The superior court is directed to prepare an amended abstract of judgment to reflect $200 as the amount of the restitution fine and the parole revocation fine.

Hastings, Acting P. J., Curry, J., concurred.

A petition for a rehearing was denied November 10, 2004, and appellant's petition for review by the Supreme Court was denied January 19, 2005.